IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**METROPOLITAN LIFE
INSURANCE COMPANY**,
a New York corporation,

       Plaintiff,

       vs.                                   No.   **CIV 01-0205 MCA/WWD** (ACE)

**THE HARTFORD FINANCIAL
SERVICES GROUP, INC.**, f/k/a
**ITT HARTFORD GROUP, INC.**,
and **HARTFORD FIRE
INSURANCE COMPANY**,

       Defendants, Counter-Claimants, Third Party Plaintiffs,

       vs.

**TANDY HUNT, ESQ.**, attorney for
Chaparral Cattle Company, LLC,

       Third Party Defendant.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Third-Party Defendant Tandy Hunt's Motion to Dismiss Third-Party Complaint [Doc. No. 55] filed on December 3, 2001, and the Motion to File Amended Third-Party Complaint [Doc. No. 60] filed by Third-Party Plaintiffs The Hartford Financial Services Group and Hartford Fire Insurance Company (hereinafter "The Hartford") on December 18, 2001. Having considered the pleadings of record, the

relevant law, the arguments of counsel, and otherwise being fully advised in the premises, the Court finds that grounds exist for granting Mr. Hunt's motion and denying The Hartford's motion as explained below. Accordingly, The Hartford's third-party complaint against Mr. Hunt is dismissed without prejudice.

I.  **BACKGROUND**

On October 17, 2001, The Hartford filed a third-party complaint against Mr. Hunt in this action alleging three counts: (1) conversion; (2) mistake and unjust enrichment; and (3) constructive trust and equitable lien. The common factual basis for each of these counts is the allegation that Mr. Hunt represented the Chaparral Cattle Company, LLC (hereinafter "Chaparral") regarding an insurance claim and that during the course of such representation Mr. Hunt received a payment from The Hartford in the amount of $86,848.24 which does not belong to him or to his client. The grounds for alleging that the payment does not belong to Mr. Hunt or Chaparral are twofold. First, the Plaintiff in this action, Metropolitan Life Insurance Company (hereinafter "Met Life"), asserts that it is the proper payee under the terms of the insurance policy, and, according to The Hartford, any funds that should have been paid to Met Life under that policy were instead diverted to Mr. Hunt and Chaparral through a series of fraudulent or otherwise unlawful actions brought about by Chaparral and a Met Life employee named John Stratman. Second, The Hartford alleges that Chaparral was not entitled to any payment on the insurance claim because Chaparral itself was responsible for causing the fire damage from which the claim arose, thus making the claim fraudulent or otherwise invalid.

On December 3, 2001, Mr. Hunt moved to dismiss The Hartford's third-party complaint against him for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for failure to comply with the requirement of Fed. R. Civ. P. 14(a). According to Mr. Hunt, the third-party complaint fails to comply with the requirements of Fed. R. Civ. P. 14(a) because the claims asserted therein are independent of Met Life's claims against The Hartford rather than derivative of those claims.

The Hartford responded to Mr. Hunt's motion by moving for leave to file an amended third-party complaint on December 18, 2001. The proposed amended third-party complaint submitted with The Hartford's motion contains essentially the same counts as the original amended complaint, but adds new factual allegations in support of those counts. According to The Hartford, these additions are sufficient to cure any defects in the original amended complaint. Mr. Hunt maintains, however, that the proposed amendments are futile because they would still result in a third-party complaint that does not comply with Fed. R. Civ. P. 14(a) and fails to state a claim under Fed. R. Civ. P. 12(b)(6).

The Hartford also moved to file a third-party complaint against Chaparral on July 29, 2002. The timing of that motion allegedly was prompted by the fact that Chaparral had emerged from a bankruptcy proceeding which would have precluded any attempt to join Chaparral in the litigation at an earlier stage. The Hartford's motion to add Chaparral as a third-party defendant was granted by this Court following a status conference on September 10, 2002.

## II. ANALYSIS

Under Fed. R. Civ. P. 14(a), a third-party plaintiff may implead "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff" provided that leave of the Court is obtained when the third-party complaint is filed more than ten (10) days after serving the original answer. The provision for impleading parties under this rule "is narrow: the third-party claim must be derivative of the original claim." King Fisher Marine Service, Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1158 n.1 (10th Cir. 1990). If a third-party claim meets this requirement under Fed. R. Civ. P. 14(a), then the third-party plaintiff also may join independent or alternate claims against the third-party defendant which are not derivative of the original claim under Fed. R. Civ. P. 18(a) provided that any additional requirements regarding jurisdiction and venue are satisfied with regard to those independent or alternate claims. See King Fisher Marine Serv., Inc., 893 F.2d at 1158 n.2; Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 394 (1st Cir. 1999); Tietz v. Blackner, 157 F.R.D. 510, 513-14 (D. Utah 1994). Such additional requirements include the rule that independent or alternate nonfederal claims must arise out of the same transaction or occurrence as the original claim. See King Fisher Marine Serv., Inc., 893 F.2d at 1166-67; Tietz, 157 F.R.D. at 513.

Once a third-party complaint is properly before the Court, it may be amended "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, an amendment to such a pleading requires leave of the Court or written consent of the adverse party. Such "leave shall be freely given when justice so requires." Id.

It is within the Court's discretion, however, to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384. "In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).

Under the current procedural posture of this case, the dispositive question is whether the proposed amended third-party complaint submitted with The Hartford's motion complies with Fed. R. Civ. P. 14(a) and states a claim for which relief may be granted under the standard set forth in Fed. R. Civ. P. 12(b)(6), such that the proposed amendments would not be futile. For the reasons set forth below, the Court concludes that the proposed amended third-party complaint against Mr. Hunt complies with the procedural requirements of Fed. R. Civ. P. 14(a) but does not state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

The Hartford's proposed amended third-party complaint against Mr. Hunt complies with Fed. R. Civ. P. 14(a) because it asserts a claim which is derivative of Met Life's original claim against The Hartford. The Hartford's derivative claim against Mr. Hunt arises from the theory that if The Hartford is liable to Met Life for the payment on Chaparral's insurance claim, then Mr. Hunt also is liable for this payment because he bears some responsibility for misdirecting it to Chaparral or failing to recognize that the payment belonged to Met Life. Given the presence of this derivative claim, The Hartford also is entitled to assert an alternate or independent claim on the theory that the payment in question should be returned to it because the insurance claim on which that payment is based is fraudulent or otherwise invalid due to Chaparral's alleged responsibility for causing the fire damage to the insured property. See King Fisher Marine Serv., Inc., 893 F.2d at 1158 n.2; Tietz, 157 F.R.D. at 513-14.

The Court's conclusion that The Hartford's proposed amended third-party complaint against Mr. Hunt contains a derivative claim for purposes of Fed. R. Civ. P. 14(a), however,

does not necessarily imply that the proposed amended third-party complaint is legally sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Mr. Hunt correctly points out that under the facts alleged in the proposed amended third-party complaint, Met Life and The Hartford were not his clients, and his representation of Chaparral placed him in an adversarial relationship with these parties.

As a general rule, "'[a]n attorney has no duty . . . to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client.'" Leyba v. Whitley, 120 N.M. 768, 777, 907 P.2d 172, 180 (1995) (quoting Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. 757, 761, 750 P.2d 118, 122 (1988)); accord Restatement (Third) of the Law Governing Lawyers § 51 cmt. c (2000). While there are limited exceptions to this rule, see generally Restatement (Third) of the Law Governing Lawyers, supra, § 51, 56, the allegations in The Hartford's proposed amended third-party complaint against Mr. Hunt are not sufficient to state a claim under those exceptions.

The first count in the proposed amended third-party complaint alleges conversion. Under New Mexico law, "[c]onversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." Sec. Pac. Fin. Servs. v. Signfilled Corp., 1998-NMCA-046, ¶ 15, 125 N.M. 38, 956 P.2d 837; accord Larranaga v. Mile High Collection & Recovery Bureau, Inc., 807 F. Supp. 111, 113 (D.N.M. 1992). "As a general proposition, . . . negligence is not a required

element of recovery for conversion." Jones v. Beavers, 116 N.M. 634, 639, 866 P.2d 362, 367 (Ct. App. 1993). Thus, a cause of action for conversion is distinguishable from the theories of negligence at issue in Garcia, 106 N.M. at 760, 750 P.2d at 121, and "[a] lawyer is liable for conversion . . . on the same basis as a nonlawyer," Restatement (Third) of the Law Governing Lawyers, supra, § 56 cmt. e. Compare Bonanza Motors, Inc. v. Webb, 657 P.2d 1102, 1104-05 (Idaho Ct. App. 1983) (holding a law firm liable to a creditor for funds it relinquished to the law firm's client in violation of the client's assignment of those funds to the creditor of which the law firm had notice), with Case Credit Corp. v. Portales Nat'l Bank, 1998-NMSC-035, ¶ 8, 126 N.M. 89, 966 P.2d 1172 (holding a bank that was a junior secured creditor liable for funds it relinquished to a debtor in repudiation of a senior secured creditor's rights to those funds of which the bank had notice).

The tort of conversion does not apply, however, to certain categories of persons who come into possession of another's property without knowledge or reason to know that a third person has the right to immediate possession of that property. See Restatement (Second) of Torts §§ 230, 231(4) (1965); W. Page Keeton et al., Prosser and Keeton on Torts §15, at 94 (5th ed. 1984); cf. Case Credit Corp., 1998-NMSC-035, ¶ 6 (noting that in the normal course of banking business, a bank handling checks for a debtor would have no obligation to investigate the proceeds coming into the debtor's account from the sale of property that serves as collateral for the debt); Restatement (Third) of the Law Governing Lawyers, supra, § 56 cmt. c ("A lawyer, like other agents, is not as such liable for acts of a client that make the client liable."). As safekeepers of others' property and holders in due course of negotiable

instruments, attorneys may fall under one or more of these categories in some circumstances. Cf. Rule 16-115(A) NMRA 2002 (requiring safekeeping of property of clients or third persons that is in a lawyer's possession in connection with a representation); Restatement (Third) of the Law Governing Lawyers, supra, § 44(1) ("A similar obligation may be imposed by law on funds or other property so held and owned or claimed by a third person.").

In this case, the proposed amended third-party complaint contains no allegation that Mr. Hunt was a knowing participant in the allegedly fraudulent activities of Chaparral or Mr. Stratman. Moreover, there is no allegation that Mr. Hunt was notified that Met Life was claiming an interest in the payment at the time he received or negotiated the check from The Hartford in connection with his representation of Mr. Hunt. Rather, the only allegation is that Mr. Hunt should have been aware of language in the insurance policy which listed Met Life as a mortgage holder and loss payee under the policy's standard union mortgage clause. (Proposed Amended Compl. ¶¶ 9, 46.) Such an allegation is insufficient to support a reasonable inference that Mr. Hunt had actual or constructive notice that Met Life owned or was claiming an interest in the funds at issue, especially considering that the proposed amended third-party complaint also alleges that one of Met Life's vice-presidents issued a memo approving the use of the policy proceeds by Chaparral for repairs one month prior to the date on which the check for $86,848.24 allegedly was tendered to Mr. Hunt. (Id. ¶¶ 11, 28, 29, 38.) The attempt to amend the third-party complaint with allegations that Met Life's authorization to use the policy proceeds for repairs was not communicated to The Hartford, and that Met Life did not expressly state that the proceeds could be paid directly to Chaparral

before the repairs were made, does not change the Court's conclusion in this regard. (Id. ¶¶ 30, 31.) In sum, these allegations are insufficient to support a claim that Mr. Hunt "had all the knowledge necessary to require" him to allow Met Life or The Hartford to be paid from the proceeds of the policy. Case Credit Corp., 1998-NMSC-035, ¶ 6.

The second and third counts of the proposed amended third-party complaint assert various equitable theories, namely unjust enrichment, mistake of fact, constructive trust, and equitable lien. The Court recognizes that such equitable remedies are generally available under New Mexico law in appropriate circumstances. See generally Tartaglia v. Hodges, 2000-NMCA-080, ¶ 60, 129 N.M. 497, 10 P.3d 176 (constructive trust arising from actual or constructive fraud, duress, undue influence, abuse of a confidence, breach of a fiduciary duty, or similar wrongful conduct); Ontiveros Insulation Co., Inc. v. Sanchez, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695 (unjust enrichment); Resolution Trust Corp. v. Barnhart, 116 N.M. 384, 391, 862 P.2d 1243, 1250 (Ct. App. 1993) (mistake of fact); Title Guar. & Ins. Co. v. Campbell, 106 N.M. 272, 277, 742 P.2d 8, 13 (Ct. App. 1987) (equitable lien). Nevertheless, the Court concludes that application of these equitable remedies to the facts alleged in this case is foreclosed by the New Mexico Supreme Court's reasoning in Garcia, 106 N.M. at 763, 750 P.2d at 124, and Leyba, 120 N.M. at 776-78, 907 P.2d at 180-82.

In Garcia, the New Mexico Supreme Court considered whether the law of this state recognizes a cause of action for constructive fraud in the context of a dispute between a law firm and a non-client adverse party. The Garcia Court defined "constructive fraud" as an act "'contrary to public policy, to sound morals, to the provisions of a statute, etc., however

honest the intention with which [it] may have been performed,'" id. (quoting Wolf & Klar Cos. v. Garner, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984)), or "'a breach of a legal or equitable duty, irrespective of the moral guilt of the fault-feasor,'" id. (quoting Archuleta v. Kopp, 90 N.M. 273, 276, 562 P.2d 834, 837 (Ct. App. 1977)). Despite the absence of any requirement of moral guilt or dishonest intentions, the Garcia Court concluded that imposing a legal or equitable duty of this sort upon the relationship between a law firm and a non-client adverse party "would be contrary to an attorney's duty to represent his client and pursue his client's interests with undivided loyalty." Id.

This reasoning was reaffirmed in Leyba, 120 N.M. at 776-78, 907 P.2d at 180-82, where the New Mexico Supreme Court recognized an adversarial exception to the duty that an attorney otherwise owes to a statutory beneficiary in a wrongful-death action. The Leyba Court agreed with the Washington Supreme Court's observation that: "'[t]he policy considerations against finding a duty to a nonclient are the strongest where doing so would detract from the attorney's ethical obligations to the client. This occurs where a duty to a nonclient creates a risk of divided loyalties because of a conflicting interest or of a breach of confidence.'" Id. at 776, 907 P.2d at 180 (quoting Trask v. Butler, 872 P.2d 1080, 1085 (Wash. 1994)).

The equitable theories alleged in the second and third counts of The Hartford's proposed amended third-party complaint are sufficiently analogous to the actions at issue in Garcia and Leyba to extend the reasoning of those cases to the facts alleged here. In the absence of allegations sufficient to support a reasonable inference that Mr. Hunt had

knowledge or reason to know of a non-client adverse party's claim to the payment he received on behalf of Chaparral at the time he received and negotiated the check, imposing an equitable duty on him under any of these theories would be contrary to the policy considerations set forth by the New Mexico Supreme Court in the above cases.

In its reply brief in support of its motion to file the proposed amended third-party complaint against Mr. Hunt, The Hartford asserts an additional theory adopted by a majority of the Kansas Supreme Court in Excel Corp. v. Jiminez, 7 P.3d 1118 (Kan. 2000). Under this theory, a contingent fee collected by an attorney may be subject to a claim for restitution if it is later determined that the recovery upon which that contingent fee is based was the product of fraud by the attorney's client in violation of Kansas' workers' compensation statute.

Part of the rationale behind this theory is that an attorney who enters into a contingent-fee agreement with a client assumes "'the inherent risks of litigation'" along with the client, including the risk that a recovery may later be subject to a claim for restitution. Id. at 1125 (quoting Mohamed v. Kerr, 91 F.3d 1124, 1127 (8th Cir. 1996)). In the view of the Kansas court, this assumption of risk makes the attorney receiving a contingent fee "more like a real party in interest than a bona fide purchaser or a judgment creditor." Id. at 1126.

The Kansas court stated, however, that its rationale for requiring the attorney to make restitution also "is grounded on policy" and "unique facts." Id. In particular, the Kansas court reasoned that the attorney's status as an officer of the court placed him on a different legal footing than other professionals and that Kansas' Rules of Professional Conduct

precluded attorneys from collecting a contingent fee in a matter when such a fee would violate Kansas' workers' compensation fraud statute. Id.

The Court is unpersuaded by The Hartford's belated attempt to apply Kansas' law of restitution to the alleged facts of this case. The Kansas contingent-fee restitution theory was raised for the first time in The Hartford's reply brief, and the facts alleged in the proposed amended third-party complaint that was submitted with its motion are not sufficient to support such a theory. Accordingly, that theory was not raised in a timely fashion for purposes of seeking a ruling on the merits of the motions presently before the Court. See FDIC v. Noel, 177 F.3d 911, 915 (10th Cir. 1999) (declining to an issue raised for the first time in a reply brief).

To the extent that the pending motions are construed to raise a more generalized contingent-fee restitution theory under New Mexico law, the Court finds such a theory to be unsupported by the "unique facts" of Excel Corp., 7 P.3d at 1126. In addition, the Kansas case "is grounded on policy" established by the Kansas Supreme Court under which attorneys' duties as officers of the court take precedence over their duties to their clients, see id., while the New Mexico Supreme Court has articulated a countervailing policy which gives priority to attorneys' duties to their clients in this context, see Garcia, 106 N.M. at 763, 750 P.2d at 124. The Court applies New Mexico law and policy in this case and, on that basis, finds that the equitable remedies requested in The Hartford's proposed amended third-party complaint have no application to the facts alleged here.

## III. CONCLUSION

For the foregoing reasons, the Court grants Mr. Hunt's motion to dismiss the third-party complaint against him and denies The Hartford's motion to file the proposed amended third-party complaint attached to its motion.

**IT IS, THEREFORE, ORDERED** that Third-Party Defendant Hunt's Motion to Dismiss Third Party Complaint [Doc. No. 55] is **GRANTED**.

**IT IS FURTHER ORDERED** that Third-Party Plaintiffs' Motion to File Amended Third-Party Complaint [Doc. No. 60] is **DENIED**.

**IT IS FURTHER ORDERED** that the third-party complaint against Mr. Hunt [Doc. No. 39] is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**, this 20th day of September, 2002, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge